## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAYMOND VUONCINO,** | **Case No. 18–cv–02437–CCC–ESK** |
| **Plaintiff,** | |
| **v.** | |
| **FORTERRA, INC.,** *et al.,* | **OPINION** |
| **Defendants.** | |

**KIEL**, U.S.M.J.

**THIS MATTER** is before the Court on defendants Forterra, Inc. and United States Pipe Fabrication, LLC's (collectively, Companies) motion to dismiss plaintiff Raymond Vuoncino's amended complaint for lack of personal jurisdiction, to dismiss for improper venue, or alternatively, to transfer venue (Companies Motion) (ECF No. 67), along with their motion to compel arbitration (Arbitration Motion) (ECF No. 68). Defendants Jeffrey Bradley and William Kerfin (collectively, Officers) filed a similar dismissal motion (Officers Motion) (ECF No. 69), and filed a joinder to the Companies' Arbitration Motion (ECF No. 70).

For the following reasons, the aspects of the Companies Motion and Officers Motion seeking transfer (Transfer Motions) are **GRANTED**. This case will be transferred to the United States District Court for the Northern District of Texas, Dallas Division, for further proceedings. The aspects of the Companies Motion and Officers Motion seeking dismissal under Rule 12(b)(2) are terminated. The aspects of the Companies Motion and Officer Motion seeking dismissal under Rule 12(b)(6) shall remain administratively terminated without prejudice. The Arbitration Motion shall remain administratively terminated without prejudice.

## BACKGROUND

As alleged by Vuoncino, this action stems from the Companies and the Officers' (collectively, Defendants) "retaliatory discharge [of Vuoncino] for whistleblowing activities concerning financial reporting practices at" defendants Forterra, Inc. (Forterra) and United States Pipe Fabrication, LLC (Fabrication) in violation of the Sarbanes Oxley Act of 2002, 18 U.S.C. § 1514A, *et seq.* (Sarbanes Oxley Act).   (ECF No. 59 ¶ 1.)   Fabrication retained Vuoncino as a consultant in March of 2013.   (*Id.* ¶ 5.)   Fabrication then hired him as a general manager. (*Id.* ¶ 6.)   Vuoncino worked "primarily" out of his home in New Jersey.   (*Id.* ¶ 8.)

### I.   CORPORATE STRUCTURE

Forterra's subsidiary acquired non-party USP Holdings, Inc. (Holdings) in April of 2016.   (*Id.* ¶ 13.)   Holdings is the parent company to Fabrication (*id.* ¶ 9) and non-party United States Pipe and Foundry Company, LLC (Foundry) (*id.* ¶ 12).   Forterra and Fabrication are defendants in this matter, but Foundry is not.

Jeffrey Bradley was Forterra's CEO.   (*Id.* ¶ 15.)   Foundry's President was William Kerfin, who was formerly Forterra's President of Water Pipe and Products.[1]   (*Id.* ¶¶ 15, 17.)   The parties dispute whether Vuoncino's employer was Fabrication (ECF No. 76 p. 6) or Foundry (ECF No. 67-1 p. 9).   However, Vuoncino does not challenge Defendants' general description of the structure between Forterra and the corporate entities involved in this action, which Defendants have graphically displayed as follows (ECF No. 67-2 p. 2):

---

[1] According to Kerfin's declaration filed in support of the Officers' Transfer Motion, Kerfin was not the President of Foundry, but rather, was the President of Holdings, a subsidiary of Forterra.   (ECF No. 69-3 ¶ 2.)



Fabrication promoted Vuoncino to Vice President of Operations in June of 2016. (ECF No. 59 ¶ 21.)   One month later, Vuoncino's role was expanded to cover more branches nationwide.   (*Id.* ¶ 22.)

In August of 2016, Bradley contacted Vuoncino to express disappointment in Fabrication's financial performance. (*Id.* ¶ 24.) In response, Vuoncino proposed reviewing costs, which would entail plant closings or headcount reductions. (*Id.*) Bradley indicated "Forterra would pay Vuoncino a $2,000 bonus for each person eliminated in any downsizing." (*Id.* ¶ 25.) Vuoncino agreed to the arrangement, and each month prepared a list of employees to be terminated.   (*Id.*)

## II.   MEETINGS OUTSIDE OF NEW JERSEY

In October of 2016, Vuoncino attended a meeting with Kerfin and other Fabrication officers in Birmingham, Alabama to discuss Fabrication's business plan for 2017 (Alabama Meeting).   (*Id.* ¶¶ 27–29.)   At the Alabama Meeting, Kerfin proposed increasing Fabrication's projected earnings by lowering the "inter-company" price Foundry charged Fabrication for certain materials[2], which

---

[2] Vuoncino's Certification of July 23, 2018 describes Foundry's sale of "raw, pipe material" to Fabrication.   (ECF No. 24 ¶ 43.)

would result in greater profits for Fabrication. (*Id.* ¶¶ 30–32.) Vuoncino viewed the proposal as "a 'left pocket/right pocket' move concerning financial performance" (*id.* ¶ 33) and expressed reservations to Kerfin about the proposal.

In November of 2016, Vuoncino attended another meeting with Bradley and Kerfin at Forterra's headquarters in Irving, Texas (Texas Meeting). (*Id.* ¶ 34.) By this time, Forterra was a publicly-traded company. (*Id.* ¶ 25.)  At the Texas Meeting, Bradley expressed concerns about whether Forterra could meet projected quarterly earnings. (*Id.* ¶ 35.)  The business plan for 2017 was also "discussed at a high level," but according to the amended complaint, Kerfin did not address the inter-company pricing proposal introduced at the Alabama Meeting. (*Id.* ¶¶ 34–36.)

Several weeks later, Vuoncino learned from Fabrication's Division Controller, Mark Ayres, that Forterra was instead providing "rebates" for inventory transfers from Foundry to Fabrication.[3]  (*Id.* ¶¶ 38, 39.)  It was Forterra's "[s]enior management [that] decided upon this rebate[.]" (*Id.* ¶ 40.) Vuoncino asked Ayres "how these intercompany transactions would be accounted for[,]" and some discussion followed. (*Id.* ¶¶ 41, 42.)  Vuoncino later repeated his objection to Ayres. (*Id.* ¶¶ 43, 44.)  In response, "Ayres told Vuoncino that the direction … came from 'above.'" (*Id.* ¶ 45.)  The amended complaint alleges Vuoncino "reasonably believed … the scheme devised at Forterra violated the law, would overstate earnings[,] and would result in Forterra submitting fraudulent [securities] filings." (*Id.*)

In December of 2016, Vuoncino attended a lunch meeting in Chicago, Illinois with Kerfin and Foundry officers to discuss Fabrication's financial performance (Illinois Meeting). (*Id.* ¶¶ 46, 47.)  During the Illinois Meeting, Vuoncino characterized the accounting for the rebate as "incorrect" and "fraudulent," and

---

[3] The amended complaint is silent on how or where the discussions between Vuoncino and Ayres took place. (ECF No. 59 ¶¶ 39, 41, 42.)

referenced a sudden increase in earnings at Fabrication's branch located in Georgia.   (*Id.* ¶ 48.)

In January of 2017, Vuoncino attended a meeting in Phoenix, Arizona with Kerfin and officers of Foundry and Fabrication (Arizona Meeting).[4]   (*Id.* ¶ 57.) Kerfin "ran the sales meeting[.]"   (*Id.* ¶ 58.)   Vuoncino "again wanted to discuss the accounting for these inter-company transfers[.]"   (*Id.* ¶¶ 59, 60.)   Kerfin "appeared agitated by Vuoncino's question" and "avoided speaking with Vuoncino."   (*Id.* ¶ 61.)   The amended complaint alleges that Vuoncino "reasonably believed Kerfin's behavior toward him was in response to Vuoncino's objection[,]" (*id.* ¶ 62), and that the Officers "either would cut Vuoncino off in meetings or become noticeably agitated" (*id.* ¶ 64).

## III.   NOTIFICATION OF TERMINATION IN NEW JERSEY

About a week after the Arizona Meeting, Kerfin sent Vuoncino an e-mail requesting to meet "outside the Newark Marriott Airport Aviation Grill Restaurant."   (*Id.* ¶ 65.)   Vuoncino "saw 'the writing on the wall' and knew he would be fired for objecting to the issues involving inventory and the inter-company rebates."   (*Id.* ¶ 66.)   Vuoncino met with Kerfin and a Forterra human resources representative at Newark Airport, and was formally terminated.   (*Id.* ¶ 67.)

Kerfin later issued a company announcement that Vuoncino was leaving Fabrication.   (*Id.* ¶ 69.)   Separately, an executive human resources advisor for Holdings advised Vuoncino that his position as Vice President of Operations for Fabrication was being eliminated due to restructuring.   (*Id.* ¶ 71.)   However, Vuoncino alleges that "[t]he reason proffered by Forterra for the decision to fire

---

[4] The amended complaint identifies an attendee of the Alabama, Illinois, and Arizona Meetings, Howard Smith, as "Vice President of Fabrication Sales" (ECF No. 59 ¶ 29), yet elsewhere identifies Smith as "Vice President of Sales for" Foundry (*id.* ¶ 46). The Companies contend Vuoncino was employed with non-party Foundry but was "assigned a role" at Fabrication.   (ECF No. 67-1 p. 12 (citations omitted).)

[him] was false and was an excuse to cover up the retaliatory discharge based upon Vuoncino's whistleblowing activities." (*Id.* ¶ 74.) Notably, the amended complaint here and elsewhere attributes decisions by Fabrication and Holdings to Forterra.

The amended complaint claims "[v]enue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendants are subject to this Court's jurisdiction … and a substantial part of the events or omissions giving rise to the claims occurred in" New Jersey.[5] (*Id.* ¶ 4.)

## PROCEDURAL HISTORY

Vuoncino filed the complaint in this Court against Forterra and the Officers on February 21, 2018. The complaint asserted claims for: retaliation under the Sarbanes-Oxley Act as to Forterra (count one); retaliation under the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act) as to Forterra and the Officers (count two); violation of Florida's Private Sector Whistleblower Act, Fla. Stat. Ann. § 448.102 (Florida Act) as to Forterra (count three); wrongful discharge in violation of public policy, ostensibly as to Forterra and the Officers (count four); and breach of contract as to Forterra and Bradley (count five). (ECF No. 1 pp. 12–15.) The original complaint did not name Fabrication as a defendant. (*Id.*)

### I.   ORIGINAL MOTIONS

On June 1, 2018, Forterra moved to dismiss the complaint for lack of personal jurisdiction, improper venue, and failure to state a claim, with an alternative request to transfer venue to the Northern District of Texas, Dallas Division. (ECF No. 11.) Forterra also filed a motion to compel arbitration on June 1, 2018. (ECF No. 12.) The Officers likewise filed a motion to dismiss

---

[5] "A reference to the wrong statute or an erroneous basis of jurisdiction will be corrected by the court if it can determine the appropriate statute or jurisdictional source from the complaint." *Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1018 (3d Cir. 1991).

seeking similar relief.   (ECF No. 14.)   Vuoncino filed oppositions to these motions on July 24, 2018.   (ECF Nos. 22, 23.)   Defendants filed reply briefs in further support of the motions on August 20, 2018.   (ECF Nos. 26–28.)

By order entered on June 18, 2019, District Judge Claire C. Cecchi referred this matter to mediation and terminated the motions without prejudice.   (ECF No. 34.)   Since the matter did not resolve at mediation, the pending motions were reinstated on August 28, 2019.   (ECF No. 35.)   This matter was reassigned to me on October 1, 2019.   (Docket entry after ECF No. 35.)

On December 16, 2019, Vuoncino filed a cross-motion for leave to file an amended complaint asserting additional allegations and adding Fabrication as a new defendant.   (ECF No. 41.)   The cross-motion to amend was fully briefed. (ECF Nos. 44, 45, 49.)   However, Vuoncino withdrew his claim under the Dodd-Frank Act (ECF No. 51 ¶3), which resulted in the administrative termination of the cross-motion to amend without prejudice (*id.* p. 3).

## II.   AMENDED COMPLAINT AND PRESENT MOTIONS

Vuoncino refiled a motion to amend on March 4, 2020 (ECF No. 52), which neither Forterra nor the Officers opposed, while preserving defenses to the amended complaint (ECF Nos. 53, 54).   By order entered on March 20, 2020, I granted Vuoncino's refiled motion to amend.   (ECF No. 58.)   Vuoncino filed the amended complaint on March 23, 2020.   (ECF No. 59.)

The amended complaint—the operative complaint in this matter—asserts claims for: retaliation under the Sarbanes-Oxley Act as to the Companies (count one); violation of the Florida Act as to the Companies (count two); wrongful discharge in violation of public policy, ostensibly as to all Defendants (count three); and breach of contract, ostensibly as to all Defendants and with specific allegations directed at Bradley (count four).   (ECF No. 59 pp. 17–19.)

The Arbitration Motion (ECF No. 68), Companies Motion (ECF No. 67), and Officers Motion (ECF No. 69) followed.   Vuoncino filed oppositions to each

Motion.   (ECF Nos. 74–76.)   The Companies filed reply briefs in further support of the Companies Motion (ECF No. 79) and the Arbitration Motion (ECF No. 80). The Officers filed a reply brief in further support of the Officers Motion (ECF No. 81) and a joinder to the Companies' reply brief in further support of the Arbitration Motion (ECF No. 82).

By letter filed on December 10, 2020, the Companies and Officers requested to have the Transfer Motions, along with the Arbitration Motion, referred to me for decision.   (ECF No. 89 p.1.)   Vuoncino expressed no objection to the referral. (ECF No. 90 p.1; ECF No. 102 p.3; ECF No. 107 p.2.)   By text order entered on January 21, 2021, I directed the Clerk of the Court to administratively terminate the Companies Motion, Officers Motion, and Arbitration Motion, without prejudice to Defendants reinstating the Motions, if appropriate, upon resolution of the Transfer Motions.   (ECF No. 105.)   A hearing on the Transfer Motions and Arbitration Motion was held on April 7, 2021.   (ECF No. 117; minute entry after ECF No. 117.)   Following the hearing, Vuoncino and the Companies filed supplemental letters addressing issues raised during the hearing.   (ECF Nos. 119 through 123.)

## PARTIES' ARGUMENTS

### I.   IMPROPER VENUE

#### A.   Defendants' Positions

The Companies Motion argues this matter should be dismissed, or alternatively transferred, because venue is improper in this district, "where only one, not a substantial part, of the events or omissions giving rise to [Vuoncino]'s claims occurred[.]"   (ECF No. 67-1 p.21.)   The Companies contend venue in the Northern District of Texas, Dallas Division (Northern District of Texas), is proper under 28 U.S.C. §1391(b)(2) "because events or omissions giving rise to [Vuoncino's] claim[s] occurred [there], Forterra's headquarters are there, [Vuoncino] attended meetings there, and [Vuoncino] received calls from

8

Forterra's headquarters related to the activities alleged." (*Id.* p. 24 (citations omitted).)   In addition, since all Defendants are subject to personal jurisdiction in Texas, transfer is "favored" in this matter because transfer would "eliminate jurisdictional uncertainties." (*Id.*)   The Companies also submit that transfer is proper based on application of the private and public factors under *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995).[6]   (*Id.* p. 25.)

The Officers Motion likewise seeks dismissal under Rule 12(b)(3) for improper venue, and alternatively (if venue in this district is proper), request transfer under 28 U.S.C. §1404(a) to the Northern District of Texas for convenience and based on additional considerations.   (ECF No. 69-1 pp. 6, 19.) The Officers represent that Kerfin "would waive [any] objection to [personal] jurisdiction" in order to litigate this action in the" Northern District of Texas.[7] (*Id.* p. 19.)   They add "the convenience of the parties and witnesses, the locus of operative facts, and the location of relevant documents all weigh in favor of transfer[.]" (*Id.*)   Further, because no Defendants reside in New Jersey, the Officers submit venue is improper under 28 U.S.C. §1391(b)(1).   This statute permits venue in a judicial district where any defendant resides so long as "all defendants are residents of the State in which the district is located[.]"   (*Id.* p. 18 (citation omitted).)

---

[6] The Companies appear to request transfer of venue pursuant to 28 U.S.C. §1404(a) (ECF No. 67 p. 2; ECF No. 67-1 p. 43), but elsewhere reference 28 U.S.C. §1406(a), which allows for dismissal or transfer (ECF No. 67-1 p. 23 n. 14.)   "Under a typical §1404(a) analysis, courts must evaluate whether transfer is appropriate based on a series of private and public interest factors to determine whether 'on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Darrow v. InGenesis, Inc.*, No. 19-17027, 2020 WL 2059946, at *4 (D.N.J. Apr. 29, 2020) (quoting *Jumara*, 55 F.3d at 879).

[7] According to the Officers, Bradley "at all relevant times worked at Forterra's headquarters[,]" which is located in Irving, Texas.   (ECF No. 69-1 p. 19 (citation omitted).)

### B.   <u>Vuoncino's Oppositions</u>

In opposition to the Transfer Motions, Vuoncino argues that venue is proper in this district under 28 U.S.C. §1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim" occurred in New Jersey, namely, "the actionable conduct of the alleged unlawful termination of Vuoncino at Newark Airport." (ECF No. 75 p.15.)   Vuoncino adds he was "clearly" a "New Jersey employee" where he had "long operated." (*Id.* p.16.)   In addition, he argues against transfer to the Northern District of Texas under 28 U.S.C. §1404(a) because "the transfer factors do not weigh in favor of transfer." (*Id.* pp.18–22; ECF No. 76 p.15.)   Vuoncino points out that "Texas appears to be less convenient for the [Officers] than New Jersey considering that neither … has any reason to travel to Texas for work [anymore]." (*Id.* p.5.)   As such, the litigation should remain "venued in New Jersey, where Vuoncino lives, worked[,] and was fired." (*Id.*)   Vuoncino also argues that, because Bradley and Kerfin are subject to this Court's personal jurisdiction, venue is proper in this district pursuant to 28 U.S.C. §1391(b)(3).[8]   (*Id.* pp.15, 16.)

### C.   <u>Defendants' Reply Briefs</u>

Repeating some of the arguments in their moving briefs, the Companies contend in response to Vuoncino's opposition that venue is improper under 28 U.S.C. §1391(b)(2) because Vuoncino "cannot refute that most of the events … giving rise to his claims—the meetings in which the Rebate Program was discussed and the termination decision—occurred outside of New Jersey." (ECF No. 79 p.11.)   They also argue Vuoncino "fails to show why … this case should not be transferred to a more convenient district [under] 28 U.S.C. §1404(a)[,]" (*id.* p.7), and again urge that the private and public factors favor transfer under 28

---

[8] 28 U.S.C. §1391(b)(3) provides, "if there is no district in which an action may otherwise be brought as provided in this section," a civil action may be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."   28 U.S.C. §1391(b)(3).

U.S.C. §1404(a).   (*Id.* pp.11, 12.)   The Companies also submit that Vuoncino cannot rely on 28 U.S.C. §1391(b)(3) because this venue provision "is only available where there is no other jurisdiction in which the action may have been brought[.]"   (*Id.* p.10.)   The Officers' reply brief advances similar arguments. (ECF No. 81 pp.16–18.)

### D.   Defendants' Declarations

#### 1.   Greene Declaration

In support of their Transfer Motion (ECF No. 67), the Companies rely upon the June 12, 2020, Declaration of Truman Greene, a Senior Vice President of Human Resources at Forterra.   (ECF No. 67-4.)   According to Greene, Forterra's headquarters, books, and records are located in Irving, Texas.   (*Id.* ¶4.)   "The majority of Forterra's executive functions are performed at [its] headquarters in Irving, Texas."   (*Id.*)   Forterra's board of directors and corporate officers "direct, control, and coordinate" these functions from Forterra's headquarters.   (*Id.*)   While employed with Forterra, Bradley "maintained his office at [Forterra's] headquarters … in Irving, Texas."   (*Id.*)   Importantly, "the decision to terminate Vuoncino was made in Texas by executive officers of Foundry."   (*Id.* ¶15.)   By contrast, "[n]one of Forterra's executive functions are performed in New Jersey."   (*Id.* ¶4.)

#### 2.   Officers' Declarations

In support of their Transfer Motion (ECF No. 69), the Officers rely upon the June 15, 2020, Declaration of Jeffrey Bradley (ECF No. 69-2) and the June 14, 2020, Declaration of William Kerfin (ECF No. 69-3).   Bradley was Forterra's chief executive officer from August 31, 2015 to June 30, 2019.   (ECF No. 69-2 ¶2.)   While employed by Forterra, he was "employed in the State of Texas, and [his] office was at Forterra's headquarters" located in Irving, Texas.   (*Id.* ¶4.)   Further, "[t]he board of directors and corporate officers direct, control, and

coordinate Forterra's activities from Forterra's headquarters in Irving, Texas" and "[t]he majority of [Forterra]'s executive functions are performed" there.   (*Id.*)

Kerfin was the President of Holdings, a subsidiary of a subsidiary of Forterra, from April 26, 2016 to the Summer of 2018.   (ECF No. 69-3 ¶2; ECF No. 67-2 p.2.)   While employed by Holdings, Kerfin was "employed in the State of Alabama, and [his] main office was at [Holdings'] headquarters in Birmingham, Alabama."   (ECF No. 69-3 ¶3.)   Vuoncino "reported to [Kerfin] at [Holdings'] headquarters in Birmingham, Alabama."   (*Id.* ¶5.)   Although employed in Alabama, as part of his responsibilities as president of Holdings, Kerfin "traveled to Forterra's headquarters in Irving, Texas for business reasons."   (*Id.* ¶6.)

### E.   <u>Vuoncino's Certification</u>

In opposition to the Transfer Motions, Vuoncino cites to his certification of July 23, 2018, submitted in support of his opposition to the Officers' prior motion to dismiss filed on June 1, 2018.   (ECF No. 22-5; ECF No. 24).   The certification, which is somewhat dated by this point, also contains an incorrect jurat. However, following the hearing on the Transfer Motions and Arbitration Motion, Vuoncino filed a supplemental certification with the appropriate jurat under 28 U.S.C. §1746.   (ECF No. 122.)   Other than correcting the jurat and stating that he believed his prior certification was accurate at the time it was executed, the supplemental certification contains no new statements.   (ECF No. 122-2.)

Vuoncino's certification of July 23, 2018 concedes his job "entailed a lot of travel, [though] the majority of [his] time was spent working from New Jersey." (ECF No. 24 ¶11.)   He avers that Bradley and Kerfin "stated on numerous occasions that their 'only' priority was meeting projected quarterly earnings." (*Id.* ¶41.)   Vuoncino also indicates he "consistently expressed [his] objections and concerns about the Rebate Program" to Bradley and Kerfin.   (*Id.* ¶49.)

## APPLICABLE LAW

"In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406." *Jumara*, 55 F.3d at 878. "For the convenience of parties and witnesses [and] in the interest of justice, a district court may transfer any civil action to any other district … where it might have been brought or to any district … to which all parties have consented." 28 U.S.C. § 1404(a). "The district court of a district in which is filed a case laying venue in the wrong … district shall dismiss, or if it be in the interest of justice, transfer such case to any district … in which it could have been brought." 28 U.S.C. § 1406(a). "[E]ither statute could theoretically provide a basis for … transfer[,]" but "Section 1406 … applies where the original venue is improper and provides for either transfer or dismissal[.]" *Jumara*, 55 F.3d at 878. "Under either section, the district court has broad discretion to grant or deny a motion to transfer the case." *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986).

28 U.S.C. § 1391 governs the venue "of all civil actions brought in district courts of the United States[.]" 28 U.S.C. § 1391(a)(1). A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" 28 U.S.C. § 1391(b)(1). It may also be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). "[I]f there is no district in which an action may otherwise be brought as provided in" 28 U.S.C. § 1391, a civil action may be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction[.]" 28 U.S.C. § 1391(b)(3). The defendant bears the burden of establishing that venue is improper. *Cosmopolitan Shopping Co., Inc. v. Cont'l Ins. Co.*, No 17-04933, 2018 WL 1617701, at *1 (D.N.J. Apr. 3, 2018) (citation omitted).

## DISCUSSION

### I.   VENUE IN NEW JERSEY IS IMPROPER UNDER §1391(b)(1)

First, venue in New Jersey is improper under 28 U.S.C. §1391(b)(1).   Under this provision, venue is proper in a district where one defendant resides so long as all defendants are residents of the state embracing that district.   28 U.S.C. §1391(b)(1).   Here, no defendant ever resided in New Jersey.   Forterra is incorporated in Delaware and is headquartered in Texas.   (ECF No. 67-1 p.11 (citations omitted).)   Fabrication is incorporated in Delaware and headquartered in Florida.   (*Id.*)   Bradley resides in Pennsylvania and Kerfin resides in Illinois. (ECF No. 69-1 p.7 (citations omitted).)   The amended complaint vaguely asserts that "[v]enue is proper under 28 U.S.C. §1391(b)(1)" (ECF No. 59 ¶4) without specifically identifying where any defendant resides.   Vuoncino's oppositions to the Transfer Motions, moreover, do not reference or discuss 28 U.S.C. §1391(b)(1). Accordingly, Vuoncino cannot rely on 28 U.S.C. §1391(b)(1) as a basis for establishing venue in New Jersey.

### II.   VENUE IN NEW JERSEY IS IMPROPER UNDER §1391(b)(2)

Second, venue in New Jersey is improper under 28 U.S.C. §1391(b)(2). Under this provision, venue is proper in a district where a substantial part of the events or omissions giving rise to the action occurred.   28 U.S.C. §1391(b)(2). However, a substantial part of the relevant events and omissions giving rise to this matter did not occur in New Jersey.

"[I]n determining whether a substantial part of the events or omissions giving rise to a cause of action occurred in a specific jurisdiction [under 28 U.S.C. §1391(b)(2)], '[t]he test … is not the defendant[s'] 'contacts' with a particular district, but rather the location of those events or omissions giving rise to the claim.'"   *Bockman v. First Am. Mktg. Corp.*, 459 F.App'x 157, 161 (3d Cir. 2012) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)).   "In assessing whether events or omissions giving rise to the [plaintiff's]

claims are substantial, it is necessary to look at the nature of the dispute." *Cottman*, 36 F.3d at 295. "Events or omissions that might only have some tangential connection with the dispute in litigation is not enough." *Id.* at 294.

The facts of this matter resemble those in *Darrow v. InGenesis, Inc.*, No. 19-17027, 2020 WL 2059946 (D.N.J. Apr. 29, 2020). In *Darrow*, the plaintiff was employed by a staffing company based in San Antonio, Texas, but worked almost exclusively from home in New Jersey and reported remotely to supervisors in Texas and Pennsylvania. *Id.* at *1–2. The plaintiff repeatedly objected to how background checks were being conducted for employees of the company's clients, was terminated by the company, and sued for retaliation. *Id.* at *2–3. Because the plaintiff's "chain of command flowed through [the company's] San Antonio headquarters" and "the alleged retaliation … occurred in Texas[,]" the *Darrow* Court found that "a substantial part of the events or omissions giving rise to the claim occurred" in the Western District of Texas, which was deemed an eligible "transferee district." *Id.* at *4.

The facts of this matter also resemble those in *Taube v. Common Good Sys., Inc.*, No 11-02380, 2011 WL 5599821 (D.N.J. Nov. 1, 2011), *report and recommendation adopted*, No. 11-02380, 2011 WL 5825792 (D.N.J. Nov. 16, 2011). In *Taube*, the plaintiff's supervisors made derogatory remarks about her pregnancy and terminated her for "poor work performance" while on maternity leave. She sued for gender and pregnancy discrimination. *Taube*, 2011 WL 5599821, at *1–2. The discriminatory comments and decision to terminate the plaintiff were made in Illinois, where the employer was headquartered. *Id.* at *2. Although the plaintiff "frequently" traveled to her employer's corporate office in Illinois, she also "communicated by telephone and email in New Jersey … with [co-workers] located in Illinois." *Id.* at *1, *4.

In recommending transfer to the Northern District of Illinois under 28 U.S.C. §1406(a), the *Taube* Court reasoned that "the mere performance of [plaintiff's] job duties in New Jersey and receipt of her termination letter in New

Jersey" did not give rise to her discrimination claims.   *Id.* at \*4.   Further, the *Taube* Court disagreed that venue was properly laid in New Jersey merely because the plaintiff was recruited, hired, and "predominantly" worked in New Jersey, where she also received the termination letter.   *Id.*   On these facts, the *Taube* Court found venue improper in New Jersey.   *Id.* at \*1.

Here, Vuoncino worked "primarily" out of his New Jersey home, but traveled to attend meetings in Alabama, Texas, Illinois, and Arizona.   At the Alabama Meeting, Vuoncino expressed reservations about Kerfin's pricing proposal.   At the Texas Meeting, although the pricing proposal was allegedly not discussed, Bradley nevertheless addressed Fabrication's business plan, and Vuoncino by that juncture knew Forterra was pressing to meet certain financial and fiscal objectives.   Later, Vuoncino learned that Forterra was providing rebates for inventory transfers from Foundry to Fabrication—a decision made by Forterra's "senior management."   (ECF No. 59 ¶ 40.)   According to Fabrication's Division Controller, the rebate decision came "from above."   Vuoncino repeatedly objected to Forterra's decision.   (*Id.* ¶¶ 39–45.)

At the Illinois Meeting in December of 2016, with Kerfin in attendance, Vuoncino described the rebate as "incorrect" and "fraudulent."   At the Arizona Meeting of January of 2017, Kerfin and other officers of Foundry and Fabrication expressed hostility when Vuoncino attempted to discuss the rebate.   When Kerfin sent Vuoncino an e-mail proposing to meet at Newark Airport, Vuoncino already saw "the writing on the wall" and expected to be terminated.   (*Id.* ¶ 66.) Vuoncino claims "Forterra[,] at all relevant times[,] was … Fabrication's alter ego as a result of … forcing [Fabrication] to take the complained-of action with regard to the rebate program."   (*Id.* ¶ 77.)   He also notes that Fabrication's financial information is "included in Forterra's consolidated financial statements[.]"   (*Id.* ¶ 94.)

Having canvassed the motion record, I cannot find that venue was properly laid in New Jersey.   The amended complaint alleges that this action arises from

Defendants' "retaliatory discharge" for Vuoncino's "whistleblowing activities" concerning the Companies' financial reporting practices.   As to the retaliatory discharge, there is no dispute the decision to terminate Vuoncino was made at Forterra's headquarters in Irving, Texas, where Forterra's executive functions are performed.   (ECF No. 69-2 ¶ 2.)   When Kerfin e-mailed Vuoncino proposing to meet in New Jersey, the writing was already "on the wall."

The mere formality of verbalizing Vuoncino's termination by Forterra in person at Newark Airport—when Vuoncino was already "expecting" to be fired—does not support the conclusion that a substantial part of the events or omissions at issue took place in this district.   Actually, Vuoncino may have already been subjected to a form of retaliatory conduct at least as early as the Arizona Meeting in January of 2017 where Kerfin was "agitated" and avoided Vuoncino for attempting to discuss the accounting for the rebate.[9]   For purposes of deciding the Transfer Motions, no retaliation occurred in New Jersey.   *See Taube*, 2011 WL 5599821, at *1–2 (finding "the mere performance of [plaintiff's] job duties in New Jersey and receipt of her termination letter in New Jersey" insufficient to establish that claims arose in New Jersey).

As to the whistleblowing activities, Vuoncino did not object to the inter-company pricing or rebate proposals at any meeting conducted in New Jersey. Rather, Vuoncino objected at meetings in Alabama, Illinois, and Arizona.   While Vuoncino asserts he repeatedly voiced his objection to the rebate proposal to Ayres (Fabrication's Division Controller), Vuoncino nowhere alleges he and Ayres were in New Jersey when these objections were made.   *Id.* at *4 (finding venue in New Jersey improper since, among other grounds, discriminatory comments were not "made at in person meetings in New Jersey.")

---

[9] Under the Sarbanes-Oxley Act, "[n]o … company … may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of [whistleblowing or other protected activity]."   *Lawson v. FMR LLC*, 571 U.S. 429, 432 (2014) (citing 28 U.S.C. § 1514A(a)).

The Vuoncino Certification does state, however, that Vuoncino "consistently expressed [his] objections and concerns about the Rebate Program" to Kerfin and Bradley.   (ECF No. 24 ¶ 49.)   Thus, to the extent Vuoncino "primarily" worked from home in New Jersey and regularly communicated by phone and e-mail with his superiors, it appears some part of the events giving rise to Vuoncino's claims occurred in this district.

But the question is whether a *substantial* part of those events or omissions occurred in this district.   Even if Vuoncino had objected to the rebate proposal during phone calls with the Officers, Bradley would presumably have been at Forterra's headquarters in Irving, Texas, and Kerfin would have been in either Birmingham, Alabama or Irving, Texas.   The respective locations of Vuoncino, Bradley, and Kerfin during these calls do not weigh in favor of finding venue proper in New Jersey under 28 U.S.C. § 1391(b)(2).   *See Darrow*, 2020 WL 2059946, at *1–3 (finding a substantial part of the events and omissions occurred in Western District of Texas even though the plaintiff worked almost exclusively from New Jersey and communicated with and voiced objections to supervisors remotely).   Most of the relevant events in this matter took place outside of this district.   Accordingly, I find that venue was improperly laid in New Jersey.

## III.   NORTHERN DISTRICT OF TEXAS IS AN ELIGIBLE TRANSFEREE DISTRICT

Conversely, because a substantial part of the events and omissions giving rise to Vuoncino's claims occurred in Texas, the Northern District of Texas is an eligible transferee district.   Consequently, Vuoncino cannot rely on 28 U.S.C. § 1391(b)(3) to properly establish venue in New Jersey, as this provision is available only where there is no district in which an action may otherwise be brought under 28 U.S.C. § 1391(b)(1) or (2).

Moreover, since venue in New Jersey is improper, 28 U.S.C. § 1406 applies, and 28 U.S.C. § 1404(a) does not.   "Section 1406 … applies where the original venue is improper and provides for either transfer or dismissal[.]"   *See Jumara*,

55 F.3d at 878.   As such, I decline to reach the issue of whether transfer under 28 U.S.C. §1404(a) would be convenient for the parties.   28 U.S.C. §1406 is not addressed in Vuoncino's supplemental letters and arguments submitted after the hearing.   (ECF Nos. 119–121, 123.)

Here, Defendants have "satisfied their burden of showing that venue would be proper in the transferee district[.]"   *Darrow*, 2020 WL 2059946, at *4.   The motion record shows Vuoncino's "chain of command flowed through" Forterra's headquarters in Irving, Texas.   *Id*.   The decision to terminate Vuoncino was made in Irving, Texas.   The pricing and rebate proposals were conceived by Forterra there.   Indeed, Ayres told Vuoncino that decisions on the rebate proposal came "from above" from Forterra's senior management.

Furthermore, Texas would have subject matter jurisdiction over this matter based on the complete diversity of citizenship between Vuoncino and Defendants and because the amount of controversy exceeds $75,000.   The Companies represent in briefing that "all [D]efendants are subject to personal jurisdiction" in Texas.   (ECF No. 67-1 p.24.)   In fact, Fabrication, Bradley, and Kerfin waive any potential argument to personal jurisdiction in Texas.   (*Id*. pp.24, 25 n.15.)   The Northern District of Texas is an eligible transferee district under 28 U.S.C. §1406(a).

## IV.   THE BREACH OF CONTRACT CLAIM

While this lawsuit is chiefly premised on allegations of protected whistleblowing activities and the corresponding retaliatory discharge, Vuoncino has also asserted a claim for breach of contract.   (ECF No. 59 pp.19, 20.)   The amended complaint alleges that Bradley (Forterra's CEO) offered Vuoncino a $2,000 bonus from Forterra for each employee eliminated in any downsizing. (*Id*. ¶¶22–25.)   It is alleged that Forterra never paid Vuoncino the promised bonus.   (*Id*. ¶¶111–114.)   Vuoncino's breach of contract claim does not appear to be "the heart of [the] entire lawsuit" and does not "serve[] the basis for each of

the [other] claims asserted in the [amended] complaint." *McNulty v. J.H. Miles & Co., Inc.*, 913 F.Supp.2d 112, 119 (D.N.J. 2012).

In any event, it appears the "agreement" was formed between Bradley (on behalf of Forterra) and Vuoncino over a phone call.   While Vuoncino presumably conducted a portion of the downsizing activities in New Jersey, he transmitted the list of employees to Bradley, who worked out of Forterra's headquarters. (ECF No. 59 ¶ 25 ("each month Vuoncino prepared a list of employees who had been laid off and sent it … to Bradley and Kerfin."); ECF No. 69-2 ¶ 4).

Significantly, insofar as Forterra breached the agreement to pay Vuoncino the bonus, the alleged breach is properly deemed to have occurred in Irving, Texas—where Forterra is headquartered, performs its executive functions, and "direct[s], control[s], and coordinate[s]" its activities.   (ECF No. 69-2 ¶¶ 2, 4.) While Vuoncino's breach of contract is not at the "heart" of this lawsuit, that the breach occurred in Texas further supports the finding that a substantial part of the events or omissions giving rise to Vuoncino's claims occurred there, and not in New Jersey.

## V.   UNRESOLVED JURISDICTIONAL ISSUES FAVOR TRANSFER

The existence of unresolved jurisdictional issues in this case also weighs in favor of transfer.   Although the dispositive aspects of the Companies Motion and Officers Motion have not been referred to me, I note that "a court may reverse the normal order of considering personal jurisdiction and venue[.]"   *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).   And "[t]he language of [§] 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."   *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).

Defendants have sought dismissal of this matter pursuant to Rule 12(b)(2) for lack of personal jurisdiction.   Transfer of this matter would moot and thereby

dispose of the issue of whether this Court may assert personal jurisdiction over Defendants.   *See Greenwald v. Holstein*, No. 13-00674, 2015 WL 12843229, at *8 (D.N.J. May 29, 2015) (finding that "substantial questions concerning whether Defendants are subject to personal jurisdiction in New Jersey … warranted transfer to the Southern District of Ohio, where jurisdiction clearly exists").

In the interests of justice and efficient case management, the transfer of this case to the Northern District of Texas will eliminate lingering issues as to personal jurisdiction.   In this regard, I defer decision on the Arbitration Motion, along with the dispositive aspects of the Companies Motion and Officers Motion, to the Texas Court.   *See McNulty*, 913 F.Supp.2d at 113 ("In light of this transfer, Defendant's motion to partially dismiss will be referred to the transferee court for resolution.")

## VI.   TRANSFER IN LIEU OF DISMISSAL

Although Defendants have sought dismissal under Rule 12(b)(3) for improper venue, I find that dismissal for improper venue would cause hardship to all parties, particularly Vuoncino.   The interest of justice would not be served if this matter were dismissed, only for this action to be refiled elsewhere.   28 U.S.C. § 1406(a)'s "transfer provision is designed to preserve claims that rigid application of dismissal rules may bar."   *Lafferty v. St. Riel*, 495 F.3d 72, 79 (3d Cir. 2007) (citation omitted).   "Transfer is generally more in the interest of justice than dismissal."   *Boily v. Walt Disney World Co.*, No. 08-04967, 2009 WL 1228463, at *8 (D.N.J. May 1, 2009) (citation omitted).   Dismissal is a "harsh remedy" whereas transfer is "the preferred remedy."   *Konica Minolta, Inc. v. ICR Co.*, No. 15-01446, 2015 WL 9308252, at *5 (D.N.J. Dec. 22, 2015) (quoting *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F.Supp.2d 317, 319 (D.N.J. 1998)). Accordingly, I find that transferring this matter to the Northern District of Texas, in lieu of dismissal, will serve the interest of justice.

## CONCLUSION

For the reasons stated, the Transfer Motions are **GRANTED.**   This case will be transferred to the United States District Court for the Northern District of Texas, Dallas Division, for further proceedings.

The aspects of the Companies Motion and Officers Motion seeking dismissal under Rule 12(b)(2) are terminated.   The aspects of the Companies Motion and Officers Motion seeking dismissal under Rule 12(b)(6), along with the Arbitration Motion, shall remain administratively terminated.

An order incorporating this decision accompanies this Opinion.[10]

  /s/ Edward S. Kiel
**EDWARD S. KIEL**
**UNITED STATES MAGISTRATE JUDGE**

Date: April 22, 2021

---

[10] On April 22, 2021, the date of this Opinion, Vuoncino filed a motion for leave to file a second amended complaint (Motion to Amend).   (ECF No. 125.)   The Motion to Amend seeks to add Foundry and Holdings as defendants.   (ECF No. 125-6 p. 2.) However, the deadline to file motions to amend or add new parties lapsed on February 12, 2021.   (ECF No. 88 ¶ 3.)   The Motion to Amend does not alter my analysis and decision as to the Transfer Motions.   The Motion to Amend will be administratively terminated and shall be deferred to the Northern District of Texas for resolution.